# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

BRIAR STEWART,

     Plaintiff,

v.            CIVIL ACTION NO.  2:25-cv-00457

WEST VIRGINIA DIVISION OF CORRECTIONS AND REHABILITATION, et al.,

     Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant West Virginia Division of Corrections and Rehabilitation's ("WVDCR") Motion to Dismiss, filed July 28, 2025. [ECF No. 5]. Plaintiff Briar Stewart timely responded, [ECF No. 7], and WVDCR timely replied, [ECF No. 8]. The matter is ripe for review.

Plaintiff alleges that Defendants Daniel Brill and Anthony Warrick, correctional officers employed by WVDCR, engaged in outrageous conduct, including the unwarranted use of "OC spray" and improper restraint. [ECF No. 1-1, ¶¶ 2–4, 8–10]. Plaintiff seeks to hold WVDCR vicariously liable for the tortious acts of its employees. *Id.* ¶¶ 27–31. WVDCR moves to dismiss the claim against it, contending that the officers' actions fall outside the scope of employment and that the agency is entitled to immunity. [ECF No. 6, at 5–8]. For the reasons set forth below, drawing all reasonable inferences in Plaintiff's favor, I find the alleged conduct plausibly falls within the officers' scope of employment. Plaintiff has therefore adequately pleaded a claim for vicarious liability against WVDCR. Accordingly, the motion, [**ECF No. 5**], is **DENIED**.

## I.    BACKGROUND

Plaintiff was an inmate at the North Central Regional Jail ("NCRJ"). [ECF No. 1-1, ¶ 7]. On or about May 13, 2023, while being escorted down a hallway at NCRJ, Plaintiff alleges that Defendant Brill sprayed him in the face with "OC spray" for "no justifiable reason." *Id.* ¶ 8. Plaintiff contends that he was fully compliant with all orders, posed no threat to himself, Defendant Brill, or others, and that there was no justification for the use of force. *Id.* Plaintiff asserts that the incident was captured on video, showing he was sprayed without cause while walking down the hall. *Id.*

Plaintiff further alleges that, following the initial use of OC spray, he was handcuffed and placed in a temporary holding cage. *Id.* ¶ 9. While restrained inside the cage, Plaintiff claims that Defendants Brill and Warrick again sprayed him with OC spray, despite his continued compliance and lack of resistance. *Id.* Plaintiff asserts that he suffered significant physical effects from both uses of OC spray, including shortness of breath and skin irritation. *Id.*

According to the Complaint, Plaintiff was not promptly decontaminated after being sprayed. *Id.* ¶ 10. Instead, he alleges he remained in the holding cage for several hours without relief, despite informing the correctional officers that he was struggling to breathe. *Id.* Plaintiff contends that he was told he would "have to sit there and think about this for a while." *Id.*

Plaintiff now brings three claims: (1) Outrageous Conduct against Defendants Brill and Warrick; (2) Violations of 42 U.S.C. § 1983 against Defendants Brill and Warrick; and (3) Vicarious Liability against WVDCR for the conduct of its employees, as alleged in Count I. *Id.* ¶¶ 14–31. WVDCR moves to dismiss the claim against it. *See* [ECF Nos. 5, 6].[1] Therefore, I consider

---

[1] Plaintiff expressly disclaims any § 1983 claim against WVDCR and does not seek to impose vicarious liability on the agency for the alleged constitutional violations of its employees. [ECF No. 4; ECF No. 7, at 1].

whether Plaintiff has adequately alleged a claim for vicarious liability against WVDCR for the intentional infliction of emotional distress by its employees.

## II.    LEGAL STANDARD

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). In resolving a motion to dismiss under Rule 12, the court may not consider "matters outside the pleadings," Fed. R. Civ. P. 12(d). Specifically, the court considers only those "documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

Generally, a pleading under the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-CV-01334, 2019 WL 956806, at *1 (S.D. W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440). These factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although "the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). Thus, "a complaint is to be construed liberally so as to do substantial justice." *Id.*

### III.    DISCUSSION

WVDCR moves to dismiss Count III of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that it cannot be held vicariously liable for the intentional tortious conduct of its employees. I disagree.

Plaintiff asserts that Defendants Brill and Warrick, employees of WVDCR, engaged in "outrageous conduct" by repeatedly deploying OC spray against Plaintiff without provocation while he was restrained and compliant. [ECF No. 1-1, ¶¶ 8–10, 27–31]. Plaintiff argues that WVDCR is vicariously liable for that conduct under the doctrine of respondeat superior because the officers were acting within the scope of their employment at the time of the incident. *Id.* ¶ 29.

To state a claim for intentional infliction of emotional distress ("IIED") under West Virginia law, a plaintiff must allege:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with intent to cause emotional distress, or acted recklessly when it was certain or substantially certain that distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis v. Alcon Labs., Inc.*, 202 W. Va. 369, 371, 504 S.E.2d 419, 421 (1998). Outrageousness requires that the conduct be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 375, 504 S.E.2d at 425 (quoting *Tanner v. Rite Aid of W. Va., Inc.*, 194 W. Va. 643, 651, 461 S.E.2d 149, 157 (1995)). Whether conduct may reasonably be considered outrageous is a legal question; whether it is in fact outrageous is for the jury. Syl Pt. 4, *id.* An employer may be vicariously liable for IIED if the employee acted within the scope of employment. Syl. Pt. 5–6, *id.*

4

WVDCR contends that it cannot be held liable for intentional tortious conduct by its employees and that such actions necessarily fall outside the scope of employment. [ECF No. 6, at 5–8]. Under West Virginia law, a state agency employer can be held vicariously liable for intentional tortious conduct of its employees, but only when specific requirements are met. First, "the nature of the governmental acts or omissions" giving rise to the suit must "involve discretionary governmental functions." Syl. Pt. 10–11, *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 496, 766 S.E.2d 751, 756 (2014). If discretionary functions are involved, the court must then apply a two-prong test: (1) the employee must have violated clearly established rights or committed fraudulent, malicious, or oppressive acts, and (2) the employee must have been acting within the scope of his "duties, authority, and/or employment" when the conduct occurred. Syl Pt. 12, *id.*

The parties do not dispute that the alleged conduct involves discretionary functions. Accordingly, I must now determine whether Plaintiff has plausibly alleged that Defendants Brill and Warrick's actions constitute a violation of a clearly established statutory or constitutional right, or are otherwise fraudulent, malicious, or oppressive. The Supreme Court of Appeals of West Virginia has previously determined that the use of "chemical agents in quantities greater than necessary *or for the sole purpose of infliction of pain*" against inmates is a violation of clearly established rights under the Eighth Amendment. *Ballard v. Delgado*, 241 W. Va. 495, 505, 826 S.E.2d 620, 630 (2019) (quoting *Iko v. Shreve*, 535 F.3d 225, 235 (4th Cir. 2008) (also recognizing the right of an inmate to decontamination and medical care following exposure to pepper spray)).

Moreover, WVDCR does not dispute that the use of OC spray on a restrained and compliant individual may reasonably be considered outrageous. *See, e.g.*, *Marcum v. Bailey*, No. 2:20-cv-00628, 2020 WL 7646977, at *4 (S.D. W. Va. Dec. 23, 2020) (citing *Marshall v. Keansburg*

*Borough*, 2013 WL 6095475, at *10 (D. N.J. Nov. 20, 2013) (finding that an IIED claim could proceed where the defendant sprayed a handcuffed and subdued plaintiff in the face with OC spray)); *see also Courtney v. Courtney*, 186 W. Va. 597, 603, 413 S.E.2d 418, 424 (1991) (recognizing that "outrageous conduct can include physical violence that causes bodily harm and emotional distress"); *Travis*, 202 W. Va. at 376, 504 S.E.2d at 426 ("In determining whether a defendant's conduct is 'extreme and outrageous,' a finder of fact may consider whether . . . the conduct arose from an abuse by the defendant of a position or relationship to the plaintiff, which gave the defendant actual or apparent authority over the plaintiff or power to affect the plaintiff's interests."). Accepting Plaintiff's factual allegations as true, I find Plaintiff has sufficiently alleged that Defendants Brill and Warrick violated a clearly established right, and that their conduct could reasonably be considered extreme and outrageous.

Having found Plaintiff has alleged a violation of a clearly established right or law by a state employee, the critical inquiry is whether "such acts or omissions were within the scope of the public official or employee's duties, authority, and/or employment." *A.B.*, 234 W. Va. at 507–08, 766 S.E.2d at 766–67. While the issue of whether an employee is acting within the scope of employment is generally a jury issue, the court is not precluded from deciding the issue as a matter of law when the facts are not disputed and "the relationship between an employee's work and wrongful conduct is so attenuated that a jury could not reasonably conclude that the act was within the scope of employment." *Id.* at 509, 766 S.E.2d at 768 (quoting *Mary M. v. City of Los Angeles*, 814 P.2d 1341, 1347 (Cal. 1991)). "The 'purpose' of the act or omission is critically important." *Id.* The court should also consider the surrounding circumstances and relevant factors, including whether "the conduct is 1) of the kind [the employee] is employed to perform; 2) occurs within the authorized time and space limits; 3) it is actuated, at least in part, by a purpose to serve the

6

master, and; 4) if force is used, the use of force is not unexpectable by the master." *Id.* at 510, 766 S.E.2d at 769 (italics omitted) (citing Restatement (Second) of Agency § 228 (Am. L. Inst. 1958)); *see also W. Va. Div. of Corr. & Rehab. v. Robbins*, 248 W. Va. 515, 530–31, 889 S.E.2d 88, 103–04 (2023).

Applying these principles, I cannot conclude as a matter of law that the conduct alleged in the Complaint falls outside the officers' scope of employment. Plaintiff alleges that the correctional officers were on duty, acting in the course of their employment, and using departmental equipment (OC spray and handcuffs) during an inmate escort and restraint process. [ECF No. 1-1, ¶¶ 8–10, 12]. First, correctional officers are employed to maintain order and control over inmates, and sometimes that requires force. Second, the alleged conduct occurred within the authorized time and space limits of employment: the incident took place during working hours, within the facility, and while the officers were performing assigned supervisory duties. Third, drawing all reasonable inferences in Plaintiff's favor, the alleged actions at least partially served the employer, as the officers' efforts to control an inmate during escort and restraint procedures relate directly to WVDCR's institutional mission of maintaining order and discipline within correctional facilities. Finally, the use of OC spray and physical restraint by correctional officers cannot be said to be "unexpectable by the master," as the use of such measures, whether appropriate or excessive, arises from the nature of correctional work. Considering these factors collectively, I find that Plaintiff's allegations plausibly place the officers' conduct within the general scope of their employment.[2]

---

[2] I acknowledge that the Complaint alleges Plaintiff was sprayed "for no justifiable reason" and that he posed no threat at the time of the incident. [ECF No. 1-1, ¶ 8]. The Complaint also alleges that the officers filed "false incident reports to cover their conduct." *Id.* ¶ 11. Taken as true, these allegations could suggest that the officers' actions may have been improperly motivated, potentially placing their conduct outside the scope of employment. However, the mere characterization of the force as excessive and unjustified does not, by itself, remove the conduct from the scope of employment under West Virginia law. *See Travis*, 202 W. Va. at 381, 504 S.E.2d at 431 ("[A]n employer may be liable for the conduct of an employee, even if the specific conduct is unauthorized or contrary to express orders, so

To support its position, WVDCR relies on several decisions from the Southern District of West Virginia in which the court concluded that officers' use of force was outside the scope of employment. [ECF No. 8, at 3–5]. In *Marcum*, No. 2:20-cv-00628, 2020 WL 7646977, at *3–5, the officer sprayed an inmate without cause in apparent retaliation for a question about a racial slur, and the court held that such purely personal conduct "could in no way serve the purposes of the [West Virginia Department of Corrections]." Similarly, in *Hamrick v. W. Va. Div. of Corr. & Rehab.*, No. 2:24-cv-00728, 2025 WL 781089, at *2–4 (S.D. W. Va. Mar. 11, 2025), an officer allegedly tased a non-threatening inmate without warning. Although it acknowledged that tasing can fall within an officer's duties under appropriate circumstances, the court found that the complaint contained no facts from which it could reasonably infer that the officer's intentional, wrongful conduct "was done in the interest of or for the benefit of his employer." *Id.* In *Liebau v. W. Va. Div. of Corr. & Rehab*, No. 2:24-cv-00587, 2025 WL 510399, at *4 (S.D. W. Va. Feb. 14, 2025), an officer allegedly sprayed an inmate for asking for his cell door to be opened, and the court found no basis to infer that the conduct furthered the employer's interests, placing it outside the scope of employment.

In sum, *Marcum*, *Hamrick*, and *Liebau* involved correctional officers whose alleged use of force was retaliatory or otherwise unrelated to their legitimate duties, placing their conduct outside the scope of employment and warranting dismissal. Here, by contrast, the officers' alleged actions occurred during an inmate escort and restraint—routine correctional functions. Although the

---

long as the employee is acting within the general scope of his authority and for the benefit of the employer."); Syl. Pt. 5, *Robbins*, 248 W. Va. at 519, 530–31, 889 S.E.2d at 92, 103–04 ("An act specifically or impliedly directed by the master, or any conduct which is an ordinary and natural incident or result of that act, is within the scope of the employment." (internal quotation marks omitted)).

Complaint does not specify the officers' precise purpose in deploying OC spray, the alleged conduct occurred while the officers were performing duties they were employed to carry out. Even if the officers' conduct violated WVDCR policies and procedures, [ECF No. 1-1, ¶ 12], conduct that is "unauthorized or contrary to express orders" can still fall within the scope of employment "so long as the employee is acting within the general scope of his authority and for the benefit of the employer," *Travis*, 202 W. Va. at 381, 504 S.E.2d at 431.

At the motion-to-dismiss stage, I must draw all reasonable inferences in Plaintiff's favor. It is therefore plausible that the officers' conduct at least partially served WVDCR. While there are some allegations that could suggest personal motivation, there is no basis at this stage to conclude as a matter of law that the correctional officers acted out of personal animus, retaliation, or any purpose wholly unconnected to their official duties. The alleged lack of justification may ultimately lead a jury to find the officers acted beyond the scope of employment, but that determination depends on factual development and credibility assessments that cannot be resolved at this stage.[3]

---

[3] WVDCR's argument treats the two prongs of *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.* as mutually exclusive, such that conduct deemed fraudulent, malicious, oppressive, or in violation of clearly established rights could never satisfy the second prong. Conversely, conduct occurring within the scope of employment to further the employer's legitimate—here, penological—purpose cannot satisfy the first prong. This interpretation collapses the two-prong inquiry and risks nullifying *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, which presupposes that an employee can simultaneously engage in conduct that is wrongful enough to violate a clearly established right yet still be sufficiently connected to official duties to warrant potential vicarious liability. *See Robbins*, 248 W. Va. at 530–31, 889 S.E.2d at 103–04 (holding that the allegations were sufficient to allow vicarious liability claim to proceed, as the officers' alleged acts and omissions, even if unauthorized or in dereliction of duty, could plausibly fall within the scope of their employment); *Crawford v. McDonald*, No. 21-0732, 2023 WL 2729675, at *7 (W. Va. Mar. 31, 2023) (finding that "a jury could reasonably find that the correctional officers' conduct in question was within the scope of their employment," where the officer's unjustified use of OC spray, failure to decontaminate, and extended use of restraints appeared "motivated, at least in part, by a purpose to serve the master"); *Travis*, 202 W. Va. at 381, 504 S.E.2d at 431 ("[A]n employer may be liable for the conduct of an employee, even if the specific conduct is unauthorized or contrary to express orders, so long as the employee is acting within the general scope of his authority and for the benefit of the employer."). Whether the officers' actions here were actuated, even in part, by a purpose to serve WVDCR—e.g., maintaining order or control during inmate transport—remains a factual question inappropriate for resolution at this juncture.

Accordingly, WVDCR's motion to dismiss is **DENIED**, and Plaintiff may proceed on his claim for IIED against WVDCR under a theory of vicarious liability.

**IV.    CONCLUSION**

For the foregoing reasons, WVDCR's Motion to Dismiss, [**ECF No. 5**], is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:        October 29, 2025

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

10